Juan Oliva GONZALES,
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5046.

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 7, 2001.

Emeterio G. Roa, III, of Arlington, Virginia, argued for plaintiff-appellant.

Elizabeth G. Candler, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This case involves the inter-relationship between two federal statutes relating to benefits for persons who served in the armed forces of the Philippines Commonwealth during World War II. The first statute, enacted in 1946, provides that such service is not service in the United States Armed Forces for purposes of statutory rights and benefits for such service. 38 U.S.C. § 107(a). The second statute, enacted in 1998, provides for the payment of certain allowances to persons captured by Japanese forces in the Philippines who

escaped and served as guerrilla fighters there.

The appellant Gonzales contends that the government's refusal to pay him such allowances constitutes a taking of his property under the Fifth Amendment, for which he sought just compensation. The Court of Federal Claims dismissed his suit, ruling that because of § 107(a), Gonzales had no property interest in the allowances that the government could have taken. We affirm.

## I

A. On July 26, 1941, President Roosevelt "calle[d] and order[ed] into the service of the armed forces of the United States ... all of the organized military forces of the Government of the Commonwealth of the Philippines."

In 1946 Congress provided, in legislation now codified at 38 U.S.C. § 107(a):

Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941 ... shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person or the service of any other person in the Armed Forces, except benefits under—

(1) contracts of National Service Life Insurance entered into before February 18, 1946; [and two other exceptions not relevant here....]

In section 654 of the 1998 National Defense Authorization Act, entitled "Payment of Back Quarters And Subsistence Allowances To World War II Veterans Who Served As Guerrilla Fighters In The Philippines," Pub.L. No. 105–85 § 654, 111 Stat. 1629, 1804–05 (1997), Congress provided for the payment of quarters and subsistence allowances:

to any individual who as a member of the Armed Forces during World War II—

(1) was captured within the territory of the Philippines by Japanese forces;

(2) escaped from captivity; and

(3) served as a guerrilla fighter in the Philippines during the period from January 1942 through February 1945.

Pub.L. No. 105–85 § 654, 111 Stat. 1629, 1804–05 (1997).

B. In 1999 Gonzales filed suit in the Court of Federal Claims, seeking just compensation for the alleged taking of his property. His complaint asserted that pursuant to President Roosevelt's July 26, 1941 order, "[o]n December 18, 1941 all the members of the Philippine military not yet called into such service were inducted into the then newly-formed United States Armed Forces in the Far East (USAFFE)" (Par. 5), that he "was among those inducted into the USAFFE in 1941, and hence became a member of the United States Armed Forces. During World War II, he was a prisoner of war held by the Japanese forces from April 9 to 15, 1942 and survived the infamous Bataan Death March. He escaped from captivity and joined the guerrilla fighters in May, 1942 until January, 1946" (Par. 6), and that as "a member of the United States Armed Forces during World War II and a former Japanese prisoner-of-war who escaped and joined the guerrillas in the Philippines within the prescribed period, [he] is thus entitled to just compensation under the Takings Clause of the United States Con-

stitution as he is deprived by law at 38 U.S.C. § 107 of his entitlement to the payment of backquarters and subsistence allowance under P.L. 105–85, § 654." (Par. 14).

On the government's motion, the court dismissed the complaint. The court "conclude[d] that section 654 does not extend benefits to members of the Philippine military who fought under the United States Armed Forces during World War II, and therefore Mr. Gonzales has no 'property' that the government could have 'taken.'" It stated that because of section 107(a), "Mr. Gonzales has no vested right to benefits under section 654," and that he therefore "cannot establish a compensable property interest in such benefits, and his taking claim must fail."

## II

■ Gonzales' sole claim is that the government's refusal to pay him under section 654 constituted a "taking" of his property, for which he is entitled to just compensation. An essential element of any taking claim, however, is that the claimant must have had a property interest in the subject of the alleged taking. *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed.Cir. 2000) (noting that under a takings analysis, "[f]irst, a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action").

■ Gonzales' theory is that, as a member of the Philippine military who was ordered into the service in the United States Armed Forces and who was captured by the Japanese, escaped and served as a guerrilla, he was entitled to quarters and subsistence allowances under section 654, and that the government took those benefits from him when it applied section 107(a) to deny them. The argument, however, assumes the question here in dispute:

did Gonzales have any property interest in those benefits? We agree with the Court of Federal Claims that he did not.

Section 654 limits benefits to a person "who [w]as a member of the Armed Forces during World War II." Half a century before Congress provided such benefits, it had determined that service in the Philippine military while those forces were in the service of the United States Armed Forces pursuant to President Roosevelt's July 26, 1941 order (as Gonzales' service had been) "shall not be deemed to have been active military service ... for the purposes of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person ... in the Armed Forces," with certain exceptions.

In other words, Gonzales' service in the Philippine military after it was ordered into the service of the United States Army Forces was not "active military ... service" for the purpose of section 654, which is a "law conferring rights, privileges, or benefits" upon certain World War II veterans "by reason of the[ir] service ... in the Armed Forces." Thus, Gonzales' World War II military service in the Philippines, which he relies upon as the basis for his claim to benefits under section 654, was not performed "as a member of the Armed Forces" as that term is used in that section. Gonzales, therefore, had no property interest in the quarters and subsistence allowances there provided for.

■ Gonzales contends, however, that section 107(a) deals solely with "veterans benefits," whereas section 654 deals with allowances, and that the former therefore does not restrict the latter. Section 107(a) is not so limited, however. It covers "rights, privileges, or benefits"—a broader category than "veterans benefits." If section 107(a) had the limited scope that Gon-

zales attributes to it, there would have been no need or reason for Congress to have excepted from its coverage, as it did, "contracts of National Service Life Insurance entered into before February 18, 1946."

## CONCLUSION

The judgment of the Court of Federal Claims dismissing Gonzales' complaint is

*AFFIRMED.*